1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SANDRA ELAINE ALCANTAR,

       Plaintiff,

   v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

       Defendant.

_____/

Case No. 1:21-cv-01538-SKO

ORDER ON PLAINTIFF'S SOCIAL
SECURITY COMPLAINT

(Doc. 1)

## I.      INTRODUCTION

Plaintiff Sandra Elaine Alcantar ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act").  (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.      BACKGROUND

Plaintiff was born on July 30, 1956, completed high school, and previously worked as a

---

[1] The parties have consented to the jurisdiction of the U.S. Magistrate Judge.  (*See* Doc. 9.)

cashier/checker.  (Administrative Record ("AR") 31, 65, 78, 210, 227, 242.)  Plaintiff filed a claim for DIB on March 19, 2018, alleging she became disabled on January 17, 2017, due to a right finger injury, asthma, and high cholesterol.  (AR 24, 66, 79, 93, 101, 241.)

**A.      Relevant Evidence of Record[2]**

**1.      Medical Evidence**

In February 2016, Plaintiff sustained an injury at work by jamming her right ring finger against the edge of a counter, which resulted in a fracture and swelling.  (AR 513–14.)  Per the recommendation of her treating physician Jonathan Liu, M.D., Plaintiff underwent an open reduction an open reduction internal fixation of the right ring finger in March 2016.  (AR 287, 513–14.)  The hardware was removed from her right ring finger in April 2016.  (AR 287.)  She worked in a "light duty" capacity from June 2016 to January 2017, when she was "sent home" because her work restrictions "could not be accommodated."  (AR 287.)  Nerve conduction studies of Plaintiff's bilateral upper extremities performed in February 2017 were normal.  (AR 448.)

In March 2017, Plaintiff presented for a "Qualified Medical Evaluation" with Steven N. Brourman, M.D., for her worker's compensation claim.  (AR 276–90.)  She complained of intermittent, moderate, achy, and sharp pain in her right ring finger, along with stiffness and weakness that caused her to drop objects.  (AR 280.)  She also complained of frequent numbness in her right pinky finger.  (AR 280.)  The examination showed "slightly diminished" sensation to light touch in Plaintiff's right ring finger, negative Tinel's and Phalen's tests, full motor strength, and a grip strength of 8, 10, and 8 kilograms on the right side and 12, 10, and 12 kilograms on the left.[3]  (AR 281–83.)

Plaintiff complained to Dr. Liu of stiffness and discomfort in her right ring finger in April 2017.  (AR 471–73.)  She exhibited paresthesia in her right hand, and hand therapy was recommended  (AR 471–72.)  In June 2017, Plaintiff presented for a worker's compensation follow

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

[3] Tinel's sign is a way to detect irritated nerves associated with carpal tunnel syndrome by "tapping at the volar surface of the wrist over the site of the median nerve in the carpal tunnel."  Robert S. Porter, M.D., et al., eds., The Merck Manual of Diagnosis and Therapy 391 (Merck Research Labs., 19th ed. 2011).  Phalen's test is also a test for carpal tunnel syndrome, which involves reproduction of tingling with wrist flexion.  Id.

up.  (AR 860–61.)  Upon examination, Plaintiff had full range of motion in her right ring finger with mild intermittent tenderness and stiffness and no swelling.  (AR 861.)  She exhibited no hand paresthesia in August 2017.  (AR 460–61.)

A September 2017 occupational therapy progress note showed flexion of Plaintiff's proximal interphalangeal joint (PIP) to 80 degrees and the distal interphalangeal joint (DIP) to 30 degrees, noting that there was "[n]ot much change in [active range of motion] since last visit."  (AR 560.)  Plaintiff reported that her finger is "very stiff" when she awakes in the morning and that it "pops a lot."  (AR 560.)  The provider was "[u]nable to replicate these symptoms in [the] clinic."  (AR 560.)  That same month, it was noted that her right ring finger is "doing much better."  (AR 455.)  In October 2017, Plaintiff exhibited grip strength of 10 pounds in her right hand and 30 pounds in her left hand, with no change in range in motion.  (AR 551.)

Plaintiff presented for a follow up appointment in January 2018.  (AR 445–49.)  Upon examination, she had no trigger finger, no tenderness, normal range of motion, and no paresthesia in her hand.  (AR 447.)  Plaintiff requested additional hand therapy.  (AR 448.)  In March 2018, Plaintiff complained that her right ring finger was bothering her.  (AR 522.)  The physical examination of her finger was normal as before, and there was no paresthesia or atrophy in her hand.  (AR 524–25.)

In May 2018, Plaintiff presented for a follow up with Dr. Liu.  (AR 756–60.)  She complained that her right ring finger was "still triggering and locking."  (AR 756.)  Her physical examination was again normal, and Dr. Liu administered an injection in her finger.  (AR 759–60.)  He indicated that "we will wait for patient to gain full strength before releasing [her] to full duty."  (AR 756.)  In June 2018, Dr. Liu indicated that Plaintiff "has improvement" in her right ring finger (AR 922.)

Plaintiff presented for a follow up in July 2018, and Dr. Liu noted she was "doing better after the Kenalog injection."  (AR 978.)  Examinations in September, November, and December 2018 showed "triggering, locking, and tenderness" in Plaintiff's right ring finger.  (AR 1052, 1060, 1076.)  Plaintiff received another Kenalog injection in October 2018.  (AR 1070.)

In January 2019, Plaintiff saw Dr. Liu complaining of "triggering and locking."  (AR 1040–

47.)  Upon examination, Plaintiff exhibited "triggering, locking, and tenderness" in her right ring finger, with normal range of motion and no atrophy.  (AR 1044.)  Hand therapy was ordered.  (AR 1046.)  Plaintiff received another Kenalog injection in April 2019.  (AR 1030.)  In May 2019, Plaintiff reported to Dr. Liu that her finger was no longer triggering or locking.  (AR 1255.)  It was observed that she was doing better after the injections.  (AR 1261.)

Plaintiff reported that she "jammed her right ring finger to a pole" and was experiencing discomfort in September 2019.  (AR 1231.)  Dr. Liu ordered updated x-ray imaging for further evaluation.  (AR 1231.)  The x-ray showed no acute findings, with no evidence of fracture or dislocation.  (AR 1231.)  In November 2019, Plaintiff complained of limited range of motion in her right ring finger.  (AR 1214.)  Her physical examination was normal, with normal range of motion, no triggering, no atrophy, and no tenderness.  (AR 1218–19.)

In November 2019, consultative examiner Robert Wagner, M.D., performed a qualified medical examination of Plaintiff.  (AR 1095–1100.)  Plaintiff reported that she cooks, cleans, drives, shops, performs her own activities of daily living without assistance, and walks some for exercise. (AR 1096.) Dr. Wagner observed that Plaintiff's "dexterity . . . is well maintained though her ability to make a fist on the right hand is decreased as is her grip strength on the right hand." (AR 1096.)  Plaintiff "was easily able to get on and off the exam table, easily able to bend at the waist to take off shoes and socks and put them back on, demonstrating good dexterity and good flexibility, bringing her ankles up to her knees to take off her socks."  (AR 1097.)  Dr. Wagner found Plaintiff's "dexterity is good," as she was "easily able to oppose fingertips to thumb tips and· pick up a paperclip," although she "cannot make a tight fist with the right hand fourth finger as she has decreased flexion of the proximal interphalangeal joint."  (AR 1097.)  Plaintiff had negative Tinel's and negative Phalen's tests.  (AR 1097.)  Her range of motion in her finger and thumb joints was normal, except for the right fourth finger proximal interphalangeal joint, which was limited to 0-60 degrees.  (AR 1098.)  Dr. Wagner found Plaintiff had a right-hand grip strength of 4/5 and a left-hand grip strength of 4+/5.  (AR 1099.)  He concluded that she had "right hand numbness which may be consistent with some recurrent carpal tunnel," as she has "decreased range of motion of the fourth finger on that hand with some decreased grip strength there in the right hand."  (AR

1099.)

In January 2020, Plaintiff again complained to Dr. Liu of limited range of motion in her right ring finger.  (AR 1205–13.)  Upon examination, Plaintiff exhibited triggering, locking, tenderness, and stiffness at her distal and proximal interphalangeal joints. (AR 1210.)  She received a trigger injection. (AR 1212.)  Plaintiff received additional trigger injections in March, May, and June 2020.  (AR 1174, 1183, 1193.)

### 2. Opinion Evidence

In May 2018, A. Nasrabadi, M.D., a state agency physician, reviewed the record and assessed Plaintiff's residual functional capacity (RFC).[4]  (AR 72–73.)  Dr. Nasrabadi found that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; and perform frequent handling and fingering with her right hand.  (AR 72–73.)  Upon reconsideration in November 2018, another state agency physician, K. Mohan, M.D., reviewed the record and affirmed Dr. Nasrabadi's findings, as well as added an additional restriction to avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation.  (AR 87–89.)

Plaintiff's case was evaluated by Libbie Russo, M.D. in May 2019.  (AR 1086.)  Dr. Russo concluded that medical evidence of record supported the RFC provided by the state agency physicians.  (AR 1086.)

In November 2019, Dr. Wagner opined, based on his objective examination findings, that Plaintiff is limited to lifting and carrying up to 50 pounds occasionally and up to 20 pounds frequently. (AR 1099.)  With respect to manipulative activities, Dr. Wagner found Plaintiff could perform gingering and feeling "frequently with the right hand with limitations due to the right-hand

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

numbness and fourth finger injury."  (AR 1100.)

**B.      Plaintiff's Statement**

Plaintiff completed an "Exertion Questionnaire" in April 2018.  (AR 213–15.)  Plaintiff stated she lives in a house with family.  (AR 213.)  She described her symptoms as difficulty holding or gripping items due to pain and a lack of strength.  (AR 213.)  When asked what kind of things she does on an average day and how those activities make her feel, Plaintiff responded that she performs house cleaning, laundry, puts away dishes, and helps prepare meals, but that she is depressed because it takes her longer than before.  (AR 213.)  Plaintiff reported she can lift light items (groceries, pots, pans, bowls, dishes) sometimes daily or sometimes once per week, and that she can carry clothes from the bedroom to the laundry room.  (AR 214.)  Plaintiff shops for groceries "sometimes twice weekly," cleans her home (washing dishes for 30-40 minutes, making her bed for 10 minutes, and picking up clothes to take to laundry room), drives a car up to 50 miles, but does not work on cars or perform yard work.  (AR 214.)  She reported she must go slowly when performing chores and that it takes longer than before due to pain.  (AR 215.)  Plaintiff sleeps for 5–6 hours at night with no rest period or naps needed during the day.  (AR 237.)  She takes Tylenol as needed, and describes her condition as painful, tingling, numbness, and weakness.  (AR 215.)

**C.      Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on June 14, 2018, and again on reconsideration on December 3, 2018.  (AR 20, 93–96, 100–106.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 107–08.)  The ALJ conducted a hearing on May 18, 2020.  (AR 38–63.)  Plaintiff appeared at the hearing with her attorney representative and testified as to her alleged disabling conditions and work history.  (AR 45–58.)

**1.      Plaintiff's Testimony**

Plaintiff testified that her right ring finger "locks" and "gets numb" and she cannot lift "heavy things" because she has no strength in it.  (AR 48–49.)  She cleans the house but it "takes [her] a while to do it."  (AR 49.)  According to Plaintiff, she drives "sometimes," cooks "some meals," and cleans her house with the help of her son.  (AR 51.)  She testified she could lift and

1   carry a gallon of milk but not for very long with her right hand; with her left hand, she can "lift

2   everything." (AR 56–57.)

3   **2.      Vocational Expert's Testimony**

4   A Vocational Expert ("VE") also testified at the hearing that Plaintiff had past work as

5   cashier checker, Dictionary of Operational Titles (DOT) code 211.462-014, which was light and

6   semiskilled work (medium as performed), with a specific vocational preparation (SVP)[5] of 3; and

7   past work as a cook helper, DOT code 317.687-010, medium and unskilled work with an SVP of

8   2. (AR 58–59.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and with

9   her work experience and posed a series of hypotheticals about this person. (AR 59.) The VE was

10  to assume this person can perform medium exertional work, frequently handle and finger with the

11  right dominant upper extremity, and who should have occasional exposure to fumes, odors, dusts,

12  and other pulmonary irritants. (AR 59.) The VE testified that such a person could not perform

13  Plaintiff's past work, but could perform other jobs in the national economy, such as bagger, DOT

14  code 920.687-014, medium work, with an SVP of 2; laundromat attendant, DOT code 369.677-

15  010, medium work, with an SVP of 2; and bundle clerk, DOT code 361.684-014, medium work,

16  with an SVP of 2. (AR 59–60.) The result would be the same if the individual could frequently

17  climb stairs and ramps, frequently stoop and crouch; frequently be exposed to humidity, wetness,

18  extreme heat and cold; and occasionally climb ladders, ropes, and scaffolds. (AR 60–61.)

19  The ALJ asked the VE, in a third hypothetical, to consider an individual who could lift 15

20  pounds and could not perform any "forceful gripping, grasping, pushing, pulling, twisting or

21  twerking with the right dominant upper extremity." (AR 61.) The VE testified that the previously

22  identified jobs would not be available. (AR 61.)

23  Plaintiff's attorney posed a hypothetical involving a person as in the first hypothetical,

24  except that they could only occasionally handle and finger with the right upper extremity. (AR

25  61.) The VE testified that the previously identified jobs would not be available. (AR 61.)

26  _____

27  [5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in

28  the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

1    **D.      The ALJ's Decision**

2           In a decision dated October 30, 2020, the ALJ found that Plaintiff was not disabled, as

3    defined by the Act.  (AR 20–32.)  The ALJ conducted the five-step disability analysis set forth in

4    20 C.F.R. § 404.1520.  (AR 22–32.)  The ALJ decided that Plaintiff met the insured status

5    requirements of the Act through September 30, 2022, and they had not engaged in substantial

6    gainful activity since January 31, 2017, the alleged onset date (step one).  (AR 23.)  At step two,

7    the   ALJ   found   Plaintiff's   following   impairments   to   be   severe:   obesity,   asthma,

8    musculoligamentous strain, and right finger fracture with open reduction and internal fixation with

9    hardware removal and right-hand numbness.  (AR 23.)  Plaintiff did not have an impairment or

10   combination of impairments that met or medically equaled one of the listed impairments in 20

11   C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 23–24.)

12          The ALJ then assessed Plaintiff's RFC and applied the assessment at steps four and five.

13   *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual

14   functional capacity . . . .  We use this residual functional capacity assessment at both step four and

15   step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the

16   RFC:

17          to perform medium work as defined in 20 CFR [§] 404.1567(c) except that she can
            frequently handle, finger, and feel with the right, dominant upper extremity.  She
18          can have occasional exposure to dusts, fumes, and other pulmonary irritants. She
            can  frequently  climb  stairs  and  ramps,  frequently  stoop  and  crouch,  and
19          occasionally climb ladders, ropes, and scaffolds.  She can frequently be exposed to
            humidity, wetness, extreme cold, and extreme heat.
20

21   (AR 24–30.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be

22   expected to cause some of the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective

23   testimony as "not entirely consistent with the medical evidence and other evidence in the record

24   for the reasons explained in this decision."  (AR 25.)

25          The ALJ determined that, given her RFC, Plaintiff could not perform her past relevant work

26   (step four), but she could perform a significant number of other jobs in the local and national

27   economies, specifically bagger, laundromat attendant, and bundle clerk (step five).  (AR 30–31.)

28

The ALJ concluded that Plaintiff was not disabled from January 31, 2017, through the date of the decision.  (AR 31.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on August 13, 2021.  (AR 6–11.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 404.981

### III.    LEGAL STANDARD

**A.    Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled.  If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing

the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.   Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's]

conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends that the ALJ's RFC determination that she can perform the lifting requirements of medium exertional work is unsupported by substantial evidence.  She asserts that the ALJ's RFC analysis was inadequate because they merely recited the medical evidence and did not create a "logical bridge" between the evidence and their conclusion.  (*See* Doc. 19 at 10–13.) Plaintiff further asserts that the ALJ erred in discounting their subjective symptom testimony.  (*See id*. at 13–16.)

The Acting Commissioner responds that that the ALJ properly assessed an RFC for a lifting and carrying restriction based on the relevant evidence in the record.  (Doc. 20 at 4–13.)  The Acting Commissioner further contends that the ALJ's discounting of Plaintiff's subjective symptom statements was not erroneous.  (*Id*. at 14–16.)

The Court addresses the parties' contentions below, and finds that reversal is not warranted.

**A.     The ALJ Did Not Err in Formulating Plaintiff's RFC**

**1.     Legal Standard**

An RFC "is the most [one] can still do despite [their] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").  An ALJ's RFC determination need not precisely reflect any particular medical

provider's assessment.  *See Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").  In making the RFC determination, the ALJ considers those limitations for which there is record support that does not depend on properly rejected evidence and subjective complaints.  *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004).  A reviewing court "will affirm the ALJ's determination of [a claimant's] RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

**2.  Analysis**

The ALJ sufficiently explained how they reached their RFC's lifting and carrying limitation.  The ALJ found that Plaintiff can perform the lifting and carrying requirements of medium exertional work based on nerve conduction studies showing normal results, repeatedly negative Phalen's and Tinel's sign tests, and improved range of motion in her right ring finger following treatment.  (AR 29, 30, 281–83, 447–448, 524–25, 861, 922, 1044, 1097, 1218–19.)  The ALJ also based their assessment of Plaintiff's lifting and carrying abilities on the "persuasive"[6] opinions of state agency physicians Drs. Nasrabadi, Mohan, and Russo that Plaintiff could perform medium work (AR 29, 72–73, 87–89, 1086) (which Plaintiff does not challenge), as well as Dr. Wagner's November 2019 consultative examination, at which Plaintiff demonstrated "good dexterity and good flexibility" by taking off her shoes and socks and putting them back on, "oppos[ing] fingertips to thumb tips," and "pick[ing] up a paperclip."  (AR 28, 1097.)  Based on his examination findings, Dr. Wagner opined that Plaintiff was limited to lifting and carrying up to 50 pounds occasionally and up to 20 pounds frequently.  (AR 1099.)

The ALJ found Dr. Wagner's opinion, and specifically his lifting and carrying restriction,

---

[6] Plaintiff's claim for benefits is governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017.  20 C.F.R. § 404.1520c.  The regulations require the ALJ to "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions," based on their "supportability" and "consistency."  20 C.F.R. § 404.1520c(a)–(b).

"generally persuasive" (AR 29)—a determination Plaintiff does not challenge.[7]  Instead, Plaintiff asserts that evidence showing instances of limited range of motion in her right ring finger and numbness and reduced grip strength in her right hand undermines this restriction (*see* Doc. 19 at 11–12), but this assertion ignores the fact that Dr. Wagner took all of these findings into account in rendering his opinion.[8]  (*See* AR 1099 (observing that Plaintiff's "right hand numbness which may be consistent with some recurrent carpal tunnel," as she has "decreased range of motion of the fourth finger on that hand with some decreased grip strength there in the right hand.").)  Furthermore, courts have rejected a relationship between a claimant's grip strength and the claimant's ability to lift and carry.  *See, e.g., Costa v. Berryhill*, No. CV 17–3934–E, 2018 WL 2021374, at *10 (C.D. Cal. Apr. 26, 2018); *Flynn v. Berryhill*, Civ. No. 17-00151 ACK-KSC, 2018 WL 379012, at *4 (D. Haw. Jan. 1, 2018) ("[g]rip strength is not synonymous with lifting ability"); *Bauslaugh v. Astrue*, No. EDCV 09-1853-MLG, 2010 WL 1875800, at *5 (C.D. Cal. May 11, 2010) ("under the Regulations, the ability to grip and grasp is not related to the ability to lift and carry.  "Grip strength measures the force grip of a hand and represents the power of squeezing between the thumb and fingers."  *Hope v. Astrue*, No. ED CV 10–93 PJW, 2011 WL 2135054, at *1 (C.D. Cal. May 30, 2011). On the other hand, "[l]ifting involves picking up a load with the legs, arms, and torso."  *Id.*

As with the evaluation of Dr. Wagner's opinion, Plaintiff does not challenge the ALJ's determination that Dr. Brourman's March 2017 opinion, in which he found that Plaintiff "should avoid heavy lifting of over 15 pounds" (AR 289), was "inconsistent with the record."  (AR 30.)  With respect to Dr. Liu's statement in May 2018 that "we will wait for patient to gain full strength before releasing [Plaintiff] to full duty" (AR 756), to which Plaintiff points in support of her

---

[7] Plaintiff contends that "the ALJ intones [*sic*] that the November 2019 report of Dr. Wagner demonstrates improvement" (Doc. 19 at 12), but does not cite any support from the record for this contention.  Nor could she, as the ALJ made no such finding, expressly or implicitly, and further did not predicate their evaluation of Dr. Wagner's opinion on a showing of improvement in Plaintiff's symptoms.  Instead, the ALJ determined that Dr. Wagner's opinion was supported by his examination findings and his review of some of Plaintiff's medical records, and was consistent with the evidence of record (AR 29).  *See* 20 C.F.R. § 404.1520c(a)–(b).  Again, Plaintiff does not disturb this determination.

[8] The ALJ explained that they, too, took this evidence into account, which is why they limited Plaintiff to "frequent handling, fingering, and feeling with the right upper extremity."  (AR 30.)  Notably, Plaintiff does not challenge this aspect of the RFC assessment.

argument that she is entitled to a closed period of disability at minimum (*see* Doc. 19 at 11), the ALJ was not required to consider it.  "Where a treating physician's opinion does not contain any functional limitations, the ALJ is not required to provide reasons for rejecting that opinion." *Benear v. Comm'r of Soc. Sec. Admin.*, No. CV-17-04160-PHX-JAT, 2019 WL 258345, at *15 (D. Ariz. Jan. 18, 2019); *see also Smith v. Berryhill*, 708 F. App'x 402, 403 (9th Cir. 2017) ("The ALJ did not err by not providing reasons to reject Dr. Ashcraft's letter because the letter contained no opinions as to [the claimant's] functional limitations.").  Moreover, as explained in the decision, because the statement "is on an issue reserved to the Commissioner," it is neither "valuable nor persuasive" and shall be rejected without further articulation.  20 C.F.R. §§ 1520b(c).

In sum, Plaintiff's suggestion that she is incapable of lifting 25 pounds frequently and 50 pounds occasionally is not supported by any medical evidence in the record apart from Dr. Brourman's opinion, which the ALJ reasonably discounted (and Plaintiff does not challenge).  Because the medical records, including those of Dr. Wagner and the state agency reviewers, do not indicate that Plaintiff needed greater lifting restrictions, substantial evidence supports the ALJ's lifting restriction.  To the extent Plaintiff is advocating for an alternative interpretation of the evidence in the record, the Court will not second guess the ALJ's reasonable interpretation, even if such evidence could give rise to inferences more favorable to Plaintiff.  *See Molina*, 674 F.3d at 1110.  Nor is the ALJ required to discuss each piece of medical evidence in the record, as Plaintiff suggests.  *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).  While Plaintiff may disagree with the RFC, the Court must nevertheless uphold the ALJ's determination because it is a rational interpretation of the evidence.  *See Ford*, 950 F.3d at 1159 ("Our review of an ALJ's fact-finding for substantial evidence is deferential"); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**B.     The ALJ Properly Discredited Plaintiff's Testimony**

      **1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an

underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*  The claimant is not required to show his impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom."  *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection.[9]  *Id.*  As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009).  Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'"  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'"  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

### 2.    Analysis

As set forth above, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms."  (AR 25.)  The ALJ also found

---

[9] The Court rejects the Acting Commissioner's contention that a lesser standard of review applies.  (*See* Doc. 20 at 14 n.16.)

1  that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these

2  symptoms are not entirely consistent with the medical evidence and other evidence in the record."

3  (AR 25.)  Since the ALJ found Plaintiff's "medically determinable impairments could reasonably

4  be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided

5  "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding.  *See Vasquez*,

6  572 F.3d at 591.  Here, the ALJ found Plaintiff's claims of debilitating symptoms not credible

7  because they are inconsistent with the medical record, specifically her reported activities of daily

8  living that "do not support a more restrictive finding."  (AR 30.)

9  As summarized by the ALJ (AR 24–25, 30), the record demonstrates Plaintiff cleans her

10  house (AR 49, 51, 213), does laundry (AR 213, 214), washes and puts away dishes (AR 213, 214),

11  makes her bed (AR 214), cooks meals (AR 213, 51), shops for groceries (AR 214), and drives a

12  car up to 50 miles (AR 51, 214).

13  An ALJ may properly consider a claimant's daily activities when evaluating credibility.  *Fair*

14  *v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (the nature of daily activities may be considered when

15  evaluating credibility).  Moreover, in evaluating a claimant's credibility, an ALJ may consider

16  inconsistencies between the claimant's testimony and the claimant's conduct and whether the

17  claimant engages in daily activities inconsistent with the alleged symptoms.  *Molina*, 674 F.3d at

18  1112.  Even where those activities suggest some difficulty functioning, they are grounds for

19  discrediting a claimant's testimony to the extent that they contradict claims of a totally debilitating

20  impairment.  *Id.* at 1113.

21  The Court finds that Plaintiff's above-described activities tend to suggest that she may still

22  be able to perform, on a sustained basis, the basic demands of the representative occupations

23  identified by the ALJ (see AR 32).  *See Fair*, 885 F.2d at 603 (finding that if a claimant has the

24  ability to perform activities "that involved many of the same physical tasks as a particular type of

25  job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent her

26  from working"); *see also, e.g., Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008)

27  (finding that the ALJ sufficiently explained his reasons for discrediting the claimant's testimony

28  because the record reflected that the claimant performed normal activities of daily living, including

cooking, housecleaning, doing laundry, and helping her husband managing finances); *Morgan*, 169 F.3d at 600 (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility); *Kelly v. Astrue*, 471 F. App'x 674, 677 (9th Cir. 2012) (holding that ALJ properly made an adverse credibility finding because, in part, claimant's daily activities included driving, washing the dishes, shopping, and caring for her two children); *Nelson v. Colvin*, No. 1:15-cv-00696-SKO, 2016 WL 3407627, at *20 (E.D. Cal. June 20, 2016) (ALJ properly discredited subjective complaints of claimant who suffered from chronic back problems where claimant engaged in activities such as preparing simple meals, washing dishes, driving a car, shopping for groceries and household supplies 2–3 times a week, walking up to a mile, using a computer for about half an hour at a time, visiting with family, mopping and vacuuming, independently handling her own finances, and doing yoga tapes at home.).

The record also contains some contrary evidence, such as Plaintiff's statements that her ability to perform some household chores is hampered by pain in her right hand.  (*See* AR 49, 213, 215.)  The ALJ's decision properly recognized that Plaintiff has some work limitations because of this.  (*See* AR 30 ("To account for her right finger/hand injury, the residual functional capacity assessment limits the claimant to frequent handling, fingering, and feeling with the right upper extremity.").)  The Court concludes, however, that the ALJ properly discredited Plaintiff's testimony that her limitations render her completely unable to work.  *Fair*, 885 F.2d at 604; *see also Bunnell*, 947 F.2d at 346 ("So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence.").  Where the ALJ makes a reasonable interpretation of Plaintiff's testimony, it is not the Court's role to second-guess it.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all the activities and noting that the ALJ's interpretation "may not be the only reasonable one").

In sum, the Court finds the ALJ discounted Plaintiff's subjective symptom allegations for a clear and convincing reason supported by substantial evidence.

1

## V.        CONCLUSION AND ORDER

2          After consideration of Plaintiff's and the Acting Commissioner's briefs and a thorough

3   review of the record, the Court finds that the ALJ's decision is supported by substantial evidence

4   and is therefore AFFIRMED.  The Clerk of this Court is DIRECTED to enter judgment in favor of

5   Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff.

6

7   IT IS SO ORDERED.

8   Dated:   **February 6, 2023**                      */s/ Sheila K. Oberto*

9                                                  UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28